# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| OKLAHOMA GAS and ELECTRIC COMPANY, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) NO. CIV-14-0759-HE |
| TOSHIBA INTERNATIONAL CORPORATION, REGENCO, LLC, and NATIONAL ELECTRIC COIL COMPANY, L.P., | ) |
| Defendants. | ) |

## ORDER

This case arises out of a contract for the "rewind" or "refurbishment" of an electric power generator (Unit 4) owned and operated by plaintiff Oklahoma Gas and Electric Co. ("OG&E") in Muskogee, Oklahoma. Defendants Toshiba International Corporation and ReGENco LLC (apparently merged since the incidents at issue here; collectively, "ReGENco" hereafter) performed the "rewind" or "refurbishment." They did so pursuant to a $5,879,000 contract awarded in 2008, which was performed and completed in 2009.

In December 2012, the refurbished generator failed. According to OG&E, the failure resulted in approximately $23 million in damages to it in repair costs and related losses. Here, it seeks to recover those losses through claims against ReGENco for breach of express warranty, breach of implied warranty of fitness for particular purpose, breach of contract, and negligence.[1]

---

[1]*It also asserts a negligence claim against National Electric Coil Company, the entity allegedly supplying parts used in the refurbishment of Unit 4.*

Plaintiff OG&E and defendant ReGENco have both moved for partial summary judgment. The central question raised by both motions is what terms were included in the contract, in particular whether provisions relied on by ReGENco limiting its liability and defining the extent of warranty coverage are included in it. ReGENco also seeks a determination that any negligence claim of plaintiff is barred by the Economic Loss Rule.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (citation omitted). And in determining whether this standard is met, the court views the evidence in the light most favorable to the non-moving party. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014).

Factual Background

Despite some disagreement between the parties as to their characterization of the facts (i.e. what is or is not "boilerplate"), the underlying facts are essentially undisputed. OG&E is an electricity production and distribution company, which operates multiple generators at its plant in Muskogee, Oklahoma. ReGENco indicates it was, at the time the work at issue was performed, in the business of servicing and repairing electric generators.

ReGENco had performed repair work for OG&E prior to the dispute at issue here. In 2006–07, the parties entered into a contract for system refurbishment and repair of a

2

different generator—Unit 5. That refurbishment project was less extensive than that sought and agreed to for Unit 4. The Unit 5 project was an "end winding . . . refurbishment" costing $745,000. The Unit 4 project at issue here was more extensive, involving a complete stator and rotor rewind,[2] for a contract price of approximately $6.0 million.

The negotiations for the earlier contract on refurbishment of Unit 5 resulted in an explicit acceptance by OG&E of certain terms sought by ReGENco and first set forth in Attachment 5.1 to ReGENco's proposal for that project [see Doc. Nos. 73-3 and 73-4]. These included a limitation of ReGENco's potential liability under the contract to the contract price and the disclaimer/limitation of certain warranties.

The negotiations for the refurbishment of Unit 4 began in September 2007 with OG&E's issuance of request for proposals ("RFP") [Doc. No. 73-1], which indicated the purchase order to be issued to the successful bidder would include General Terms and Conditions set out on OG&E's website. In response, ReGENco submitted a detailed proposal dated October 11, 2007 [Doc. No. 73-2], which described its bid on the work it understood to be needed. The proposal included an Attachment 5.1 which stated: "ReGENco proposes to perform this Work under the same Terms and Conditions mutually agreed upon on PO# 4500293412 dated 01/16/07 . . . ." [the contract for Unit #5] and set out, among other things, the same limitation of liability language and warranty limiting language that had been

---

[2]*The parties' submissions indicate electric generators are composed of two major components: the central rotating part containing electricity-conducting metals (conductors) called the "rotor", and the stationary part, also containing conductors, within which the rotor turns called the "stator."*

3

accepted as to Unit 5. Doc. No. 73-2, p. 13.[3]

On January 16, 2008, OG&E issued its Purchase Order to ReGENco. The Purchase Order referenced the labor and materials set out in OG&E's request for proposal and in ReGENco's proposal. It also included OG&E's "General Conditions." These did not include the limitation of liability language sought by ReGENco and the warranty language was also inconsistent with ReGENco's proposal.

On January 31, 2008, a ReGENco officer emailed the contracting officer for OG&E, thanking him for the contract and referencing an attached "Order Acknowledgment" for the Unit 4 contract [Doc. No. 76-11]. The Order Acknowledgment included the following language:

> Thank you for your order. Our acceptance of your order is expressly conditional on your assent to inclusion in the Contract of the Standard Terms checked below, which shall control in case your order does not treat these subjects, or in case of conflict with the provisions of your order. Assuming we have or will receive your assent, we are proceeding on your order under reservation of all rights. If this understanding is not satisfactory, please advise us promptly and in any event within 15 days, and we will stop work. Your failure to so advise us, as well as any responsive action by you in furtherance of our proceeding, as by exchange of information, return of drawings, and the like, and in any event your accepting the initial shipment, shall evidence your assent and shall operate as a waiver of objection to our Standard Terms.

The box which was "checked below" stated:

> Other Mutually agreed upon Terms and Conditions between OG&E and ReGENco LLC on PO#4500293412 dated 1-16-2007.

---

[3]*Page references are based on the pagination employed by the court's electronic filing system.*

It is undisputed that the Order Acknowledgment was delivered to OG&E as indicated and that OG&E did not object to it, nor did OG&E take any other action inconsistent with it or with going forward with the contract.

Discussion

OG&E argues that the limitation of liability language, and related warranty language, appearing in (originally) Attachment 5.1 did not become a part of the contract between the parties. In part, it bases its argument on the position that the parties' contract and the dispute arising out of it are subject to the Uniform Commercial Code ("UCC") and that this dispute must be resolved by applying the UCC rather than the law otherwise applicable to contract disputes, i.e. other applicable statutes or the common law of contracts.[4] It argues that, under the UCC, only those "reciprocal" provisions appearing in both sets of competing "standard" documents become part of the contract, and that the disputed provisions here do not meet that requirement. ReGENco argues this dispute is not subject to the UCC and that ordinary contract principles lead to the conclusion that ReGENco's terms were part of the contract. Further, it argues that, even if the UCC applies, it does not lead to exclusion of the disputed terms. Alternatively, ReGENco argues that, if all else fails, it should be permitted to pursue a claim or defense for reformation of the contract due to mistake of fact.

As both parties concede, the question of whether the UCC applies or not depends on whether the contract is viewed as one for services or for goods. In general, the UCC applies

---

[4]*Both parties appear to concede that this dispute is governed by Oklahoma law. Oklahoma's version of the UCC is found at 12A Okla. Stat. §§ 1-101 et seq.*

to "transactions in goods." 12A Okla. Stat. § 2-102. Contracts for services are not subject to the UCC and are governed by other sources of contract law. See Harvell v. Goodyear Tire and Rubber Co., 164 P.3d 1028, 1034, n. 25 (Okla. 2006); see also Fairchild v. Swearingen, Case No. 110274, 2013 WL 8481731 at *2 (Okla. Civ. App. Dec. 31, 2013).[5]

Where a contract includes the sale of both goods and the delivery of services, as the contract at issue here plainly does, courts evaluate the transaction in its entirety and determine whether the goods or services aspect of the contract predominates. Fairchild, 2013 WL 8481731 at *2. In making the "predominance" determination, a court looks to the language of the contract, the surrounding circumstances, the relationship between the goods and services, the compensation structure, the intrinsic worth of the goods provided, and other factors. Id.; see also Specialty Beverages, L.L.C. v. Pabst Brewing Co., 537 F.3d 1165 (10th Cir. 2008) (applying the "predominant factor" test as Oklahoma law would most likely apply it).

Having evaluated these factors, the court concludes the contract as to Unit 4 was predominantly one for services. The parties' arrangement included both the delivery to OG&E of goods having a substantial value and the rendition of substantial services by ReGENco. While the question is close, the court concludes the current record, which includes what appears to be a full set of the contract documents, themselves very detailed in

---

[5]*Fairchild is an unpublished decision from Oklahoma's intermediate appellate court. However, it supplies a more complete discussion on some of the UCC issues referenced and is, in any event, generally consistent with cases from the Oklahoma Supreme Court and cases elsewhere which have addressed them.*

nature, as well as thorough discussions of the issue by the parties, is a sufficient basis upon which to resolve the issue.

The question is close because the extent and value of the "goods" included in the contract was substantial. The refurbishment included the replacement of major components in the generator, and the portion of the contract price attributable to the components or other equipment installed exceeds half of it. However, substantial factors cut in the opposite direction. OG&E's request for proposals referred to the "work" to be performed, rather than to equipment to be bought or the like,[6] and included a substantial description of items that are plainly "services" in nature: "removal" of existing equipment, the cleaning of various parts or components, the testing of existing as well as new components, and the like. The testing of existing components appears to have been substantial.

The RFP contemplated the vendor doing a generator field rewind using the existing copper. ReGENco's submissions indicate it employed thirteen people to perform this service, both engineers and a project manager, and that its engineers and others spent over 12,000 man-hours on the refurbishment of the generator. ReGENco's proposal included hourly rates for these workers in its pricing.

Moreover, the structure of the overall arrangement suggests OG&E was concerned, in substantial part, with ReGENco's expertise in conducting the refurbishment, not just with

---

[6]The transaction was apparently handled by OG&E personnel normally addressing "service-type" contracts.

acquiring the goods/components and installing them.⁷ To be sure, OG&E was concerned with having a working generator, but rather than contracting with ReGENco to build or acquire a new one, ReGENco was tasked to repair and extend the functional life of the existing generator.

In short, while strong arguments can be made for both the "goods" and the "services" aspects of this contract and arrangement, the court concludes it was one predominantly for services. Having so concluded, the common law of contracts (or other non-UCC state statutes) becomes the basis for decision.⁸

In order to have a valid contract, there must be mutual consent or, in other words, a meeting of the minds between the parties. Beck v. Reynolds, 903 P.2d 317, 319 (Okla. 1995) (citing 15 Okla. Stat. § 2). Consent is mutual if all parties agree on the same thing in the same sense. Id.; 15 Okla. Stat. § 66. And to achieve mutual consent, there must be an offer by one party and an acceptance of that offer by the other party. Redwine Resources, Inc. v. Predator Technologies, L.L.C., 171 P.3d 330, 334 (Okla. Civ. App. 2007). An acceptance

---

⁷*The parties' submissions indicate a substantial portion of the component parts were manufactured by co-defendant National Electric Coil Company, itself a competing bidder for the overall project. As ReGENco argues, OG&E's purchase of the components through it, rather than directly from National Electric Coil, suggests reliance on ReGENco's expertise.*

⁸*It is far from clear that a different result would be reached as to the pending motions even if the UCC was applied as the basis for decision. The UCC's treatment of additional terms (see 12A Okla. Stat. § 2-207), the impact of the prior course of performance and/or dealing between the parties (see 12A Okla. Stat. §§ 1-303, 2-202(a)), and potentially other provisions, may well lead to the same result in light of ReGENco's insistence on the particular conditions in both its proposal and the Order Acknowledgment, its explicit conditioning of its performance, and the parties' history and agreement as to Unit 5.*

"must be absolute and unqualified," or else it operates as a new proposal or counter-offer. 15 Okla. Stat. § 71.

The parties do not dispute that a contract between them existed, but they have differing views of when it was formed and, as a result, what terms were included in it. OG&E argues the contract was formed by ReGENco's acceptance of the terms proposed in the Purchase Order, which did not include the liability limiting and warranty language upon which ReGENco relies. ReGENco argues the contract was formed based on its proposal or by reading all of the various documents together. Applying the principles described above, the court concludes the contract between these parties was formed, and the applicable terms fixed, at the point where ReGENco sent its Order Acknowledgment and OG&E acquiesced in it.

The proposal submitted by ReGENco in response to the RFP was an offer to perform on the terms described in it. But OG&E did not simply accept that offer. Rather, it issued its own Purchase Order, which included different terms in various respects and therefore functioned as a rejection of the ReGENco proposal and a counter-offer. But that counter-offer did not become the contract either, because ReGENco did not unconditionally accept it, and an acceptance must be absolute and unqualified. 15 Okla. Stat. § 71. ReGENco's conditional acceptance did, however, become its own counter-offer which incorporated the Purchase Order, as modified by the additional conditions referenced in the Order Acknowledgment. So the question becomes whether that ReGENco counter-offer, which included the disputed terms, was accepted by OG&E.

9

The court concludes it was. It is undisputed that the Order Acknowledgment sent to OG&E by ReGENco expressly conditioned ReGENco's agreement on OG&E's agreement with the special conditions.[9] The Order Acknowledgment put OG&E on notice that ReGENco would view OG&E's silence, or other acquiesence in ongoing contract performance, as constituting OG&E's consent to the conditions. It is also undisputed that OG&E did not challenge or object to those conditions in any way. In the circumstances existing here, its silence and continued participation in the transaction operated as an acceptance of the conditions.

As a general rule, an offeree's silence does not operate as an acceptance of an offer. However, performance of the conditions of an offer or acceptance of the consideration in connection with an offer do constitute acceptance of the offer. 15 Okla. Stat. § 70; see also Restatement (Second) of Contracts §§ 19, 69 (describing an act or failure to act as sufficient to effect acceptance when the offeree knows the offeror may infer acceptance from that conduct). Further, where an offeree accepts the benefits of a transaction, it also consents to the obligations which are known or ought to have been known to the offeree. 15 Okla. Stat. § 75.

Here, OG&E knew ReGENco was proceeding on the basis of the conditions being

---

[9]*OG&E appears to argue that the Order Acknowledgment included an unconditional acceptance because the e-mail that it accompanied stated that ReGENco's executive committee approved and signed the contract. However, it is plain from the face of the Order Acknowledgment that acceptance was conditioned on the modified terms. The only reasonable interpretation of the e-mail, then, is that the executive committee approved the project subject to those same modified terms.*

10

part of the deal. OG&E had a reasonable opportunity to reject those terms if it chose to. But it did not, choosing instead to proceed with the performance and accept the benefits of the transaction. In these circumstances, OG&E's failure to reject the terms at issue, coupled with its conduct in performing the contract, were sufficient to constitute acceptance of ReGENco's final offer. That offer included the liability and warranty limitations.[10]

As the referenced limitations were part of the agreement, that has the following result. ReGENco's motion will be granted insofar as it seeks a determination that the following language is part of the agreement:

> The remedies of the Buyer set forth in these General Conditions are exclusive, and the sum total liability of Seller to Buyer with respect to the work, or anything done in connection therewith, such as performance or breach thereof, whether in contract, in tort (including negligence) or under any warranty or otherwise, shall not exceed the contract dollars.

Similarly, the contract is determined to include this language as to warranties (rather than the conflicting language in OG&E's Purchase Order offer):

> This warranty is expressly in lieu of all other warranties, including, but not limited to implied warranties of merchantability and fitness, and constitutes the only warranty of Seller with respect to the goods supplied by Seller.

ReGENco has also moved for summary judgment on plaintiff's negligence claim, on the basis it is barred by the Economic Loss Rule. Under that rule, a claimant cannot recover in tort for a breach of contractual duty where the breach resulted only in "economic loss and

---

[10]*ReGENco suggests Oklahoma law requires that, where multiple documents are part of one transaction, they must be read together and construed with reference to each other. See 15 Okla. Stat. § 158. To the extent that statute suggests some different analysis than the conventional offer-counteroffer analysis referenced above, it leads to the same result in this case.*

11

disappointment", and there is no personal injury or damage to other property. Waggoner v. Town & Country Mobile Homes, Inc., 808 P.2d 649, 653 (Okla. 1990). Oklahoma courts have applied this rule in product liability suits because the protection of buyer expectations as to a product is accomplished by application of the law of contracts and warranties. Id.

OG&E does not dispute that it seeks to recover only for economic losses. However, it argues that no Oklahoma state court has applied the economic loss rule in a negligence action and to do so here would be an unprecedented leap. It is true that the rule has not been applied to all negligence actions arising under Oklahoma law. See Compsource Okla. v. BNY Mellon, N.A., Case No. CIV-08-469, 2009 WL 2366112 (E.D. Okla. Jul. 31, 2009) (declining to apply the economic loss rule in a negligence action arising from alleged breach of fiduciary duty). But here, the dispute is centered on damage to a product and whether that damage is covered by a warranty, substantially the same sort of issue as is presented in a products liability suit. See, e.g., United Golf, LLC v. Westlake Chemical Corp., Case No. 05-CV-0495-CVE-PJC, 2006 WL 2807342 (N.D. Okla. Aug. 15, 2006) (applying the reasoning of Waggoner in a negligence claim where the UCC warranty provisions would provide a comprehensive remedy). The court concludes the rule applies to bar the negligence claim asserted here.

## Conclusion

For the reasons stated, plaintiff OG&E's motion for partial summary judgment [Doc. No. 75] is **DENIED**. Defendant ReGENco's motion for partial summary judgment [Doc. No. 73] is **GRANTED** to the extent indicated.

This case is set for status conference on **Friday, July 22, 2016, at 10:00 a.m.**, in Chambers. The parties are directed to file, on or before **Tuesday, July 19, 2016**, a Joint Status Report and Discovery Plan reflecting the parties' position(s) as to the issues remaining for resolution in light of this order and addressing, as appropriate, the scheduling and other issues ordinarily addressed by such report. See LCvR16.1.

**IT IS SO ORDERED**.

Dated this 1st day of July, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE